**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
ERIKA LIBBY,                        :
                                    :    CIVIL ACTION NO. 06-2903 (MLC)
        Plaintiff,                  :
                                    :    MEMORANDUM OPINION
        v.                          :
                                    :
JILL M. CONNER, et al.,             :
                                    :
        Defendants.                 :
_____:
```

**COOPER, District Judge**

Plaintiff, Erika Libby, brings this action against
defendants, Jill M. Conner and Jonathan Conner (collectively,
"defendants"), to recover damages for personal injuries sustained
in an automobile accident.  (Dkt. entry no. 1, Compl.)
Defendants move for summary judgment in their favor pursuant to
Federal Rule of Civil Procedure ("Rule") 56(c).  (Dkt. entry no.
19.)  The Court, for the reasons stated herein, will grant the
motion.

## BACKGROUND

Plaintiff and defendant Jill M. Conner were involved in an
automobile accident in New Jersey on January 19, 2006.  (Dkt.
entry no. 21, Pl. Br., at 1.)  Plaintiff was taken to the
hospital after the accident.  (Id. at 1-2.)  X-ray examinations
of her right ribs, chest, and cervical spine were conducted.
(Dkt. entry no. 19, Def. Br., Ex. B, 1-19-06 X-Ray Report.)  The
X-ray examination of the right rib revealed no fractures or other

abnormalities.  (Id.)  The X-ray examination of the chest revealed no evidence of pneumothorax[1] or cardiopulmonary pathology.  (Id.)  Also, the visualized bony skeleton, soft tissues, and trachea were normal.  (Id.)  The X-ray examination of plaintiff's cervical spine revealed a "straightening of the normal lordotic curve of the spine."  (Id.)  Straightening of the spine is consistent with a muscle spasm.[2]  (Def. Br., Ex. N, Sporn Report; dkt. entry no. 21, Pl. Br., Ex. C, 3-4-06 Bogosian Report.)

Plaintiff saw her family medical doctor, James W. Mahoney, on January 26, 2006.  (Pl. Br., at 2.)  At that time, she was experiencing headaches, as well as pain in her neck, shoulder, back, and right knee.  (Id.)

Plaintiff underwent an X-ray examination of her right knee on February 4, 2006, which revealed "no significant abnormality." (Def. Br., Ex. C, 2-4-06 X-Ray Report.)  On February 8, 2006, a CT scan of her head was performed, the results of which were "normal."  (Def. Br., Ex. D, 2-8-06 CT Scan Report.)

---

[1] "Pneumothorax" is a collection of air or gas in the pleural cavity.  Taber's Cyclopedic Medical Dictionary 1539 (Clayton L. Thomas ed., 17th ed. 1993).

[2] A "spasm" is an involuntary sudden movement or muscular contraction which occurs as a result of some irritant or trauma. Taber's Cyclopedic Medical Dictionary 1833 (Clayton L. Thomas ed., 17th ed. 1993).

Plaintiff began approximately six months of chiropractic care and physical therapy with a chiropractor, Paul G. Bogosian, in February 2006.  (Pl. Br., at 2-3.)  At this time, she was experiencing pain in her neck, shoulders, back and arms, and an increased occurrence of migraine headaches.  (Id. at 2.)  Before the accident, she would experience migraine headaches "once or twice per year," but after the accident, these headaches occurred "a couple times per week, lasting a couple hours to half a day." (Id.)

Bogosian diagnosed plaintiff with a number of injuries after his initial examination on February 24, 2006, including (1) acute cervical sprain/strain, (2) multiple location subluxation, (3) muscle spasms, (4) "hyperextension-hyperflexion type injury (whiplash) of the cervical spine," (5) "cervical facet joint fixation," (6) muscle inflammation, (7) muscle tension headaches, and (8) "cervico-cranial syndrome."[3]  (Pl. Br., Ex. C, 3-4-06 Bogosian Report.)  Bogosian also noted that plaintiff's prognosis was "good" and "guarded," with "continued improvement" expected. (Id.)

Bogosian rendered a certificate of chiropractic treatment pursuant to N.J.S.A. § 39:6A-8(a) on June 7, 2006.  (Pl. Br., Ex. C, Certification of Bogosian Regarding Erika Libby

---

[3] "Cervical" refers to the region of the neck.  Taber's Cyclopedic Medical Dictionary 354 (Clayton L. Thomas ed., 17th ed. 1993).  "Subluxation" is a partial or an incomplete dislocation of the vertebrae.  Id. at 1898.

("Certification").)  The Certification lists plaintiff's injuries
as (1) "cervical facet joint fixation," (2) muscle spasms, (3)
multiple location subluxation, (4) muscle inflammation, (5)
muscle tension headaches, and (6) "cervico-cranial syndrome."
(Id.)  It also states that the plaintiff's "injuries to her head,
neck and right shoulder are permanent since they have not healed
to function normally with further medical treatment."  (Id.)
Further, the Certification states that two reports, dated May 5,
2006 and May 26, 2006, are incorporated into the Certification,
and that the opinions set forth in these two reports "are based
on objective clinical evidence" and "offered with a reasonable
degree of chiropractic probability."[4]  (Id.)

    Plaintiff concluded regular treatment with Bogosian on
August 21, 2006.  (Pl. Br., at 2-3.)  Plaintiff maintains she was
"still troubled with shoulder and mid back pain radiating up her
neck and down her right arm, and headaches with periodic
migraines" at that time.  (Id. at 4.)  Bogosian's August 21, 2006
report, however, notes that plaintiff's headache pain that day
was a "2 on the 1 to 10 Pain Scale," her neck pain was a "1" on
the "1 to 10 Pain Scale," and her "rhomboids, interscapular" pain
was "1" on the "1 to 10 scale."[5]  (Def. Br., Ex. H, 8-21-06

    [4] The May 5, 2006 report referred to in the Certification is
not in the record.

    [5] The location of the "rhomboids, interscapular" area appears
to be around the shoulder blades.  Taber's Cyclopedic Medical
Dictionary 1007, 1755 (Clayton L. Thomas ed., 17th ed. 1993).

4

Bogosian Report.)   Further, while noting that "permanent residuals" were "possible," it states that plaintiff had "experienced a marked improvement."   (Id.)   Her prognosis was "good," with "continuous improvement" expected.   (Id.)   Moreover, it states that plaintiff had "reached maximum chiropractic improvement" and was "no longer under active care" with regard to the accident.   (Id.)

Plaintiff returned to Bogosian for treatment on January 22, 2007.   (Pl. Br., at 3.)   Plaintiff's subjective complaints, according to Bogosian's report from that day's visit, included a worsening of headache pain, muscle pain, and "intermittently experienced" paresthesia.[6]   (Def. Br., Ex. M, 1-22-2007 Bogosian Report.)   In his report, Bogosian noted that plaintiff's progress had been "slower than expected," she could "expect to experience intermittent exacerbations" of her conditions, and her injuries appeared to be "permanent."   (Id.)   Her prognosis at that time was "fair to guarded." (Id.)

Defendants' medical expert, Aaron A. Sporn, also examined plaintiff and reviewed her medical records in January 2007. (Def. Br., Ex. N, Sporn Report.)   Sporn diagnosed plaintiff's injuries as soft tissue sprains and strains to several body regions including the cervical spine, lumbar spine, right ribs,

---

[6] "Paresthesia" is a sensation of numbness, prickling, or tingling.   Taber's Cyclopedic Medical Dictionary 1438 (Clayton L. Thomas ed., 17th ed. 1993).

and right knee, a possible sprain and strain of the right
shoulder, and a superficial abrasion of the right knee.  (Id.)
Although he noted that "subjectively, symptoms persist,
particularly in the spinal region," he stated that her injuries
were not permanent.  (Id.)

Defendants move for summary judgment, arguing that there is
no genuine issue of material fact that plaintiff's injuries are
not "permanent" as required to surpass the limitation on lawsuit
threshold under N.J.S.A. § 39:6A-8(a).  (Dkt. entry no. 19.)

## DISCUSSION

### I.   Standard of Review for Summary Judgment

Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The summary
judgment movant bears the initial burden of showing that there is
no genuine issue of material fact.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  Once the movant has met this prima facie
burden, the non-movant "must set forth specific facts showing
that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A
non-movant must present actual evidence that raises a genuine
issue of material fact and may not rely on mere allegations.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  The Automobile Insurance Cost Reduction Act

The Automobile Insurance Cost Reduction Act ("AICRA") aims to, inter alia, control the rising cost of automobile insurance

7

and achieve lower insurance premiums.  N.J.S.A. § 39:6A-1.1
et seq.; Johnson v. Scaccetti, 192 N.J. 256, 269 (N.J. 2007);
DiProspero v. Penn, 183 N.J. 477, 488 (N.J. 2005).  AICRA
attempts to achieve these goals by giving insured individuals an
option of lower automobile insurance premium payments in exchange
for restricting their right to sue a defendant for non-economic
damages for injuries in the event of an automobile accident.  See
N.J.S.A. § 39:6A-8(a); Johnson, 192 N.J. at 269; DiProspero, 183
N.J. at 480-81, 488.  This option is known as the "limitation on
lawsuit" or "verbal" threshold.  DiProspero, 183 N.J. at 481,
486.

        The limitation on lawsuit threshold functions by prohibiting
an insured individual from suing a defendant for non-economic
damages unless the injury resulting from the accident results in
(1) death, (2) dismemberment, (3) significant disfigurement or
significant scarring, (4) displaced fractures, (5) loss of a
fetus, or (6) a permanent injury within a reasonable degree of
medical probability, other than scarring or disfigurement.
N.J.S.A. § 39:6A-8(a).  An injury is defined as permanent "when
the body part or organ, or both, has not healed to function
normally and will not heal to function normally with further
medical treatment."  Id.  A plaintiff must prove, by objective
clinical evidence, an injury fitting into one of these six
statutorily defined threshold categories in order to surpass the

8

limitation on lawsuit threshold.  <u>Serrano v. Serrano</u>, 183 N.J. 508, 518 (N.J. 2005).  A plaintiff, however, need not show that the injury caused a serious life impact, or that the injury was "serious."  <u>DiProspero</u>, 183 N.J. at 506; <u>Serrano</u>, 183 N.J. at 518.

A purpose of the limitation on lawsuit threshold is to eliminate lawsuits for injuries that are not serious or permanent, including lawsuits for soft tissue injuries.  N.J.S.A. § 39:6A-1.1(b); <u>Serrano</u>, 183 N.J. at 516.  Thus, "[d]ue to history and legislative intent, the verbal threshold standard must not be read liberally to allow the threshold to be easily met.  Rather, the verbal threshold must be viewed as an important barrier designed to keep insurance costs down."  <u>Jacques v. Kinsey</u>, 347 N.J.Super. 112, 126 (Super. Ct. 2001).

An insured individual subject to the limitation on lawsuit threshold who chooses to sue for non-economic damages must also provide the defendant with a certification from a licensed physician within sixty days of filing the complaint.  N.J.S.A. § 39:6A-8(a).[7]  The certification must state that the plaintiff has sustained an injury that falls into one of the six categories under the statute.  <u>Id.</u>

---

[7] A chiropractor is qualified to render a certification pursuant to N.J.S.A. § 39:6A-8(a).  <u>Afram v. Heller</u>, 380 N.J.Super. 545, 551 (App. Div. 2005).

The certification "shall be based on and refer to objective clinical evidence." N.J.S.A. § 39:6A-8(a). This evidence may be based on medical testing. Id. Such testing, however, must be performed in accordance with accepted medical protocols pursuant to N.J.S.A. § 39:6A-4(a) and the use of valid diagnostic tests administered in accordance with N.J.S.A. § 39:6A-4.7. Id.; Davidson v. Slater, 189 N.J. 166, 189 (N.J. 2007); Gorman v. Grunt, No. A-3744-05T5, 2007 WL 1670859, at *4 (N.J. App. Div. June 12, 2007).[8] Section 11:3-4.5 of the New Jersey Administrative Code enumerates the list of valid diagnostic tests that have been determined to have value in the evaluation of injuries, the diagnosis and development of treatment plans for persons injured in an accident.[9] Davidson, 189 N.J. at 189-90;

_____

[8] Section 39:6A-4(a) addresses the parameters of verbal insurance policies and Section 39:6A-4.7 authorizes the Division of Consumer Affairs to establish a list of valid diagnostic tests to be used in conjunction with appropriate health care protocols in treatment of persons sustaining bodily injury and subject to N.J.S.A. § 39:6A-8(a). See N.J.S.A. §§ 39:6A-4(a), 39:6A-4.7; Gorman, 2007 WL 1670859, at *4 n.1.

[9] The accepted diagnostic tests listed are (1) needle electromyography ("needle EMG"), (2) somasensory evoked potential ("SSEP"), visual evoked potential ("VEP"), brain audio evoked potential ("BAEP"), or brain evoked potential ("BEP"), nerve conduction velocity ("NCV") and H-reflex Study, (3) electroencephalogram ("EEG"), (4) videofluoroscopy, (5) magnetic resonance imaging ("MRI"), (6) computer assisted tomographic studies ("CT scan"), (7) dynatron/cyber station/cybex, (8) sonograms/ultrasounds, (9) thermography/thermograms, and (10) brain mapping. See N.J.A.C. § 11:3-4.5. Although not listed in N.J.A.C. § 11:3-4.5, an X-ray examination also has been recognized as an accepted diagnostic test. See, e.g., Cruz v. Glenn, No. A-4010-05T1, 2007 WL987159, at *2 (N.J. App. Div. Apr.

Gorman, 2007 WL 1670859, at *4 n.1; see N.J.A.C. § 11:3-4.5.
Also, the testing may not be experimental in nature or depend
entirely upon subjective patient response.  N.J.S.A. § 39:6A-
8(a).  The intent of these provisions was to ensure that only
honest and reliable medical evidence and testing procedures would
be used to prove that an injury meets the limitation on lawsuit
threshold.  Davidson, 189 N.J. at 189; DiProspero, 183 N.J. at
489.

A court is not bound to rely solely on a physician's
certification as evidence that plaintiff has met the limitation
on lawsuit threshold when deciding a motion for summary judgment.
Kauffman v. McCann, No. 05-3687, 2007 WL 1038696, at *3 (D.N.J.
Mar. 29, 2007); Davidson, 189 N.J. at 189.  The certification
thus is treated like any other evidence on summary judgment.
Kauffman, 2007 WL 1038696, at *3.  Moreover, if the certification
does not rely on objective medical evidence showing that
plaintiff has met the limitation on lawsuit threshold, the Court
may grant summary judgment for the defendant.  Id. at *4.

If a plaintiff pleads an aggravation of a pre-existing
injury or condition as part of demonstrating that the claimed

---

4, 2007)("[The physician] examined plaintiff, and he viewed and
considered the objective tests available, which included x-
rays"); Metta v. Berkowitz, No. A-2405-05T3, 2006 WL 2238026, at
*4 (N.J. App. Div. Aug. 7, 2006)("Plaintiff has been examined on
at least four different occasions and has had cervical MRIs,
lumbosacral MRIs, and cervical x-rays.  All of those objective
tests were negative.").

injuries satisfy an AICRA category, comparative medical evidence must also be produced to demonstrate that the accident was the proximate cause of the injury aggravation.  <u>Davidson</u>, 189 N.J. at 185-86.  This medical evidence should differentiate and explain the plaintiff's prior and present conditions or injuries.  <u>See</u> <u>Diemer v. Plath</u>, No. A-1993-04T1, 2005 WL 3999741, at *3 (N.J. App. Div. May 12, 2006) (noting that plaintiff's doctor differentiating and explaining two accidents, the second of which aggravated injuries from the first accident, was sufficient to survive a motion for summary judgment).

## III. Plaintiff's Injuries

It is undisputed that the plaintiff is subject to the limitation on lawsuit threshold here.  (Def. Br., at 6; Pl. Br., at 7.)  Plaintiff alleges that she sustained "permanent" injuries in the accident.  (Compl., at ¶ 6, Pl. Br. 7-10.)  Defendants contend that plaintiff has failed to produce objective medical evidence of "permanent" injury to overcome the limitation on lawsuit threshold.  (Def. Br. at 5-7.)  For the reasons discussed <u>infra</u>, plaintiff has failed to rebut the defendants' showing that her injuries do not meet the limitation on lawsuit threshold.

### A. Plaintiff's Muscle Spasms

Plaintiff alleges muscle spasms as a "permanent" injury. (Compl., at ¶ 6.)  A muscle spasm is an objective medical finding because finding one does not depend on a patient's subjective

complaints, as it is an involuntary movement.  Jacques, 347
N.J.Super. at 119-20.  "However, the fact that somewhere in the
course of treatment plaintiff had an objective finding of some
injury is not necessarily sufficient" to overcome the limitation
on lawsuit threshold.  Id. at 120.  Moreover, "[a] muscle spasm
is not generally a permanent condition, nor is it by its nature
indicative of a permanent condition.  Rather, it is a temporary
problem."  Id.  Thus, whether a muscle spasm will be considered a
"permanent" injury depends on the frequency and persistency of
the spasm.  Metta, 2006 WL 2238026, at *4.  "A plaintiff must
document that the spasm is persistent and ongoing over a
sustained period of time to raise a genuine issue of material
fact sufficient to withstand summary judgment."  McEnroe-Carey v.
Jones, No. A-5151-05T3, 2007 WL 471135, at *2 (N.J. App. Div.
Feb. 15, 2007).

     Plaintiff's muscle spasms do not constitute "permanent"
injuries here.  Plaintiff's X-ray examination on January 19, 2006
found that "there was a straightening of the normal lordotic
curve of the spine."  (Def. Br., Ex. B, 1-19-06 X-Ray Report.)
Bogosian's March 4, 2006 report notes that "X-rays were taken of
[plaintiff's] cervical spine, results consistent with cervical
spasms" and lists muscle spasms as one of plaintiff's injuries.
(Pl. Br., Ex. C, 3-4-06 Bogosian Report.)  The Certification also
lists muscle spasms as one of plaintiff's injuries.  (Pl. Br.,

Ex. C, Certification.)  Plaintiff's muscle spasms are again
mentioned in Bogosian's July 7, 2006 report.  (Pl. Br., Ex. C, 7-
7-06 Bogosian Report.)  It appears that plaintiff no longer
suffers from muscle spasms, however, as there is no mention of
any muscle spasms in any of Bogosian's subsequent reports.  (See
Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex. M, 1-22-07 Bogosian
Report.)  In January 2007, defendants' expert, Sporn, also
examined plaintiff and did not find any spasms.  (See Def. Br.,
Ex. N, Sporn Report.)  Therefore, plaintiff has not shown that
her muscle spasms, as a temporary condition that appears to have
dissipated since the accident, are "permanent" injuries under
AICRA.  See McEnroe, 2007 WL 471135, at *2; Jacques, 347
N.J.Super. at 120.

**B. Plaintiff's Other Injuries**

Plaintiff must prove by objective evidence, supported by a
certification, that she has sustained "permanent" injuries to
overcome the limitation on lawsuit threshold, as discussed supra.
The evidence in Bogosian's reports does not provide sufficient
objective medical evidence of "permanent" injuries.  (See Pl.
Br., Ex. C, 3-4-06 Bogosian Report, 5-26-06 Bogosian Report, 7-7-
06 Bogosian Report; Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex.
M, 1-22-07 Bogosian Report.)

Several of the diagnostic tests used by Bogosian are based
on the plaintiff's subjective responses; thus, the findings from

those tests do not constitute objective evidence of "permanent injury."  See N.J.S.A. § 39:6A-8(a); Serrano, 183 N.J. at 518; see also Phifer v. Kauffman, No. 05-4578, 2007 WL 1557203, at *4 (D.N.J. May 22, 2007) (noting that "AICRA does not permit the use of subjective testimony to prove a 'permanent' injury.")  For example, Bogosian conducted a number of range of motion studies on the plaintiff throughout the course of her treatment.  (See Pl. Br., Ex. C, 3-4-06 Bogosian Report, 5-26-06 Bogosian Report; Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex. M, 1-22-07 Bogosian Report.)  These findings do not constitute objective medical evidence of "permanent" injury, however, because range of motion tests are based on the patient's subjective pain responses. Branca v. Matthews, 317 F.Supp.2d 533, 538 (D.N.J. 2004); Jacques, 347 N.J. Super. at 119; see also Davidson, 189 N.J. at 190 (remanding matter on issue of permanency of plaintiff's injuries, noting that range of motion tests performed on plaintiff were not valid diagnostic methods).

A number of other diagnostic tests conducted by Bogosian are similarly not objective evidence of "permanent injury" because their results are dependent on the patient's subjective response. See N.J.S.A. § 39:6A-8(a); Serrano, 183 N.J. at 518.  For example, the "Jackson Compression Test," "Lindner's Sign," "Kemp's Test," "Spurling's Test," "Codman's Sign," the "Yeoman's Heel to Buttock Test," the "Shoulder Depression Test," and the "Cervical Distraction Test" are tests that will yield positive

15

results if the patient reports experiencing pain when the test is conducted.[10]  (See Pl. Br., Ex. C, 3-4-06 Bogosian Report; Def. Reply Br., Ex. B, Kemp's Test Definition, Ex. D, Spurling's Test Definition.)  The "Trigger Point Studies" utilized by Bogosian also appear to depend on the patient's subjective pain response.[11]  (See Pl. Br. Ex. C, 3-4-06 Bogosian Report, 5-26-06 Bogosian Report; Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex. M, 1-22-07 Bogosian Report.)

None of the tests used to diagnose plaintiff in the course of Bogosian's treatment, moreover, are listed as accepted diagnostic procedures in N.J.A.C. § 11:3-4.5, and do not appear to be otherwise recognized as accepted diagnostic procedures.[12] See Davidson, 189 N.J. at 189-90 (noting that all diagnostic tests used to diagnose plaintiff's conditions, except for MRI

_____

[10] The "Yeoman's Heel to Buttock Test," although not described in the record, is also dependent on subjective pain response.  J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine (28th ed. 2005).  It appears that the "Shoulder Depression Test" and the "Cervical Distraction Test," also not described in the record, similarly depend on the patient's pain response.

[11] A "trigger point" is any place on the body that when stimulated causes a sudden pain in a specific area.  Taber's Cyclopedic Medical Dictionary 2042 (Clayton L. Thomas ed., 17th ed. 1993).

[12] In addition to the tests discussed supra, in the course of treating plaintiff Bogosian utilized (1) kinesiological tests to determine if there were any nerve related motor deficits, (2) palpation, which is an examination using the hands, and (3) neurological tests.  (See Pl. Br., Ex. C, 3-4-06 Bogosian Report, 5-26-06 Bogosian Report, 7-7-06 Bogosian Report; Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex. M, 1-22-07 Bogosian Report.)

examination, were not "on the list of accepted diagnostic procedures," and thus did not satisfy AICRA's requirements with regard to diagnostic procedures); N.J.A.C. § 11:3-4.5.  In sum, the findings from Bogosian's reports are not objective medical evidence of "permanent" injury.  See N.J.S.A. § 39:6A-8(a).[13]

Bogosian's reports do not show that there is a genuine issue of material fact with regard to the permanency of plaintiff's injuries here, even if the findings were based on objective medical evidence.  (See Pl. Br., Ex. C, 3-4-06 Bogosian Report, 5-26-06 Bogosian Report, 7-7-06 Bogosian Report; Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex. M, 1-22-07 Bogosian Report.)  The last report of plaintiff's regular treatment with Bogosian, dated August 21, 2006, states that the plaintiff's prognosis was "good," with "continuous improvement expected," with "permanent residuals" only "possible."  (Def. Br., Ex. H, 8-21-06 Bogosian Report.)  Moreover, she had reached "maximum chiropractic improvement" and, after that last visit, was "no longer under

---

[13] It appears that plaintiff is claiming the accident caused aggravation of migraine headaches.  (Pl. Counter-Statement of Facts, at ¶ 6; Pl. Br., at 9.)  Even if plaintiff had produced objective medical evidence of her alleged "permanent" injuries, plaintiff would have to produce comparative medical evidence of the migraine headaches in particular.  See Davidson, 189 N.J. at 185; Diemer, 2005 WL 3999741, at *3.  Plaintiff has failed to do so here, as she has not submitted her medical records pertaining to treatment of the migraine headaches prior to the accident, nor have any of Bogosian's reports differentiated or explained the occurrence of the migraine headaches before and after the accident.  (See Pl. Br., Ex. C, 3-4-06 Bogosian Report, 5-26-06 Bogosian Report, 7-7-06 Bogosian Report; Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex. M, 1-22-07 Bogosian Report.)

active care" with regard to the accident.  (Id.)  These statements suggest that plaintiff's injuries are expected to continue to heal, or were already fully healed, and do not indicate that plaintiff's injuries are "permanent."  See N.J.S.A. § 39:6A-8(a) ("[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.")

Plaintiff returned to visit Bogosian in January 2007.  (Def. Br., Ex. M, 1-22-07 Bogosian Report.)  Bogosian states in the January 22, 2007 report that plaintiff's injuries "appear to be permanent."  (Id.)  The report notes that plaintiff's "activities of daily living are affected by her symptoms" and that she can expect to experience "intermittent exacerbations" of her conditions.  (Id.)  This report does not otherwise point out, however, how plaintiff's injuries are "permanent" as defined in AICRA.  See N.J.S.A. § 39:6A-8(a). Although the report notes that plaintiff's progress has been "slower than expected," it does not indicate that plaintiff's progress has stopped so that her injuries have not healed to function normally and will not heal to function normally with further medical treatment.  See id. Moreover, a future treatment plan is recommended, indicating that plaintiff's conditions may improve with further medical treatment.  (See Def. Br., Ex. M, 1-22-07 Bogosian Report.)

The objective medical evidence in the record also does not show plaintiff sustained "permanent" injuries in the automobile accident. (<u>See</u> Def. Br., Ex. B, 1-19-06 X-Ray Report, Ex. C, 2-4-06 X-Ray Report, Ex. D, 2-8-06 CT Scan Report.) A CT scan of plaintiff's head revealed "normal" findings. (<u>See</u> Def. Br., Ex. D, 2-8-06 CT Scan Report.) X-ray examinations of plaintiff's right knee, right ribs and chest did not reveal any other abnormalities or injuries. (<u>See</u> Def. Br., Ex. B, 1-19-06 X-Ray Report, Ex. C, 2-4-06 X-Ray Report.) Also, as discussed <u>supra</u>, plaintiff's muscle spasms, an objective medical finding, appear to have dissipated. (<u>See</u> Def. Br., Ex. H, 8-21-06 Bogosian Report, Ex. M, 1-22-07 Bogosian Report, Ex. N, Sporn Report.) In sum, there is no objective evidence to show that plaintiff has sustained "permanent" injuries as required by AICRA to surpass the limitation on lawsuit threshold.

### CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant defendants' motion for summary judgment. The Court will issue an appropriate order and judgment.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** October 31, 2007